FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL D.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>Defendant. | No. 1:19-CV-03141-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 12, 13. Attorney Nicholas D. Jordan represents Daniel D. (Plaintiff); Special Assistant United States Attorney Erin F. Highland represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **DENIES** Defendant's Motion for Summary Judgment; **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; and

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING PLAINTIFF'S MOTION - 1

**REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits (DIB) on November 30, 2015, Tr. 90, alleging disability since August 7, 2006, Tr. 212, due to major depression, post-traumatic stress disorder (PTSD), left shoulder injuries, neck injury, lower back pain, and right arm and hand pain and numbness, Tr. 229. The application was denied initially and upon reconsideration. Tr. 112-18, 120-24. Administrative Law Judge (ALJ) Larry Kennedy held a hearing on May 2, 2018 and heard testimony from Plaintiff and vocational expert Steve Duchesne. Tr. 43-89. The ALJ issued an unfavorable decision on July 17, 2018 refusing to reopen Plaintiff's previous application, which constructively amended the date of onset to May 22, 2010 and finding that Plaintiff was not disabled from May 22, 2010 through the date Plaintiff was last insured for DIB benefits, which was June 30, 2011. Tr. 21-35. The Appeals Council denied review on May 21, 2019. Tr. 1-5. The ALJ's July 17, 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 20, 2019. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 40 years old as of May 22, 2010. Tr. 212. Plaintiff completed his GED in 2010 and received training in computer applications in 2012. Tr. 230. His reported work history includes jobs as a fast food cook, as a pizza delivery driver, as a landscaping foreman, and in security and maintenance. Tr. 230. When applying for benefits Plaintiff reported that he stopped working on August 7, 2006 because of his conditions. Tr. 229.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant

cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, he is found "disabled." 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 17, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from May 22, 2010 through the date Plaintiff was last insured for DIB benefits, June 30, 2011.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from May 22, 2010 through June 30, 2011. Tr. 24.

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease and a left shoulder impairment (e.g. dislocations, glenohumeral joint arthritis, and status post multiple surgeries). Tr. 24.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 27.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined that he could perform a range of light work with the following limitations:

> he had no restriction in standing, walking, or sitting with normal breaks. He could lift up to 20 pounds occasionally, and lift and/or carry up to ten pounds frequently with both upper extremities or with the dominant right upper extremity alone. With the non-dominant left upper extremity alone, he could occasionally lift or carry articles like docket files, ledgers, or small tools. He could not reach overhead with the left upper extremity (meaning above shoulder level); between waist and shoulder level, he could frequently reach forward with the left upper

> extremity. He could frequently handle and/or finger, but could not perform repetitive, forceful gripping, grasping, or turning with the left upper extremity.

Tr. 27-28. The ALJ identified Plaintiff's past relevant work as labor gang supervisor and security guard and found that he could not perform this past relevant work. Tr. 33-34.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of office helper, housekeeper, and sales attendant. Tr. 34-35. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from May 22, 2010 through June 30, 2011. Tr. 35.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to find Plaintiff's mental health impairments severe at step two, (2) failing to fully develop the record, (3) failing to properly weigh Plaintiff's symptom statements, (4) failing to properly weigh the medical opinions in the record, and (5) failing to make a proper step five determination.

## DISCUSSION

**1. Step Two**

Plaintiff asserts that the ALJ erred by failing to find his mental health impairments severe at step two. ECF No. 12 at 12-17.

Disability is defined "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b).

The ALJ acknowledged Plaintiff's alleged PTSD and anxiety, but found that these did not meet the twelve-month durational requirement:

> These mental conditions were attributable to a very tragic accident in which his daughter passed away over Memorial Day weekend in 2011. The incident occurred only about one month before the date last insured (Exhibit 13E/4). The claimant described his functioning, as understandably, worsening significantly after his daughter died. The claimant attended his initial behavioral health consultation on May 31, 2011, only days after the accident. The claimant's wife was reportedly driving and was severely injured, as was their younger daughter. The claimant was in the stage of acute grief at the time (Exhibit 2F/56-57). While this diagnosis was made prior to the date last insured, this exact diagnosis did not last for the required 12 month period (20 CFR 404.1505(a)). In addition, the claimant was not diagnosed with PTSD until months after the date last insured (Exhibit 3F/1). Thus, the severity of the claimant's PTSD condition cannot be considered herein.

Tr. 25-26.

On May 29, 2011, Plaintiff's daughter was killed in a car accident. Tr. 293. On May 31, 2011, Plaintiff presented to his counselor discussing his grief. Tr. 409-10. He had an elevated PHQ-9 screen for depression and his "[s]cores suggest high likelihood for clinical depression." Tr. 410. He was seen again on June 2, 2011 by Adam Kaplan, PA-C who diagnosed him with acute grief reaction with difficulty sleeping. Tr. 411. In August of 2011, Plaintiff "describes ongoing grief, but he does not think of his symptoms as grief reaction. He has a lot of difficulty concentrating and attending. This is new behavior for him, since the motor-vehicle

ORDER GRANTING PLAINTIFF'S MOTION - 6

accident." Tr. 581. In October of 2011, Plaintiff was admitted to the emergency room with depression and epigastric pain with nausea and vomiting. Tr. 591. The physician stated "at this point I think it might be related to his acute event and anxiety and depression because before this episode, he did not have any of these symptoms." Tr. 592. He admitted having some suicidal ideation, but no plan. Tr. 590. Plaintiff was involuntarily detained as a danger to himself and others. Tr. 593. He was diagnosed with major depressive disorder, severe, recurrent, without psychotic features. Tr. 595. In January of 2012, he was admitted to the emergency room for a possible anxiety reaction. Tr. 613. In March of 2012, he again was treated for anxiety. Tr. 632. In May of 2012, a year after the accident, Plaintiff was treated for "ongoing panicky symptoms." Tr. 633, 635. In June of 2012, Plaintiff was admitted to the hospital for a possible overdose with increased depression following the anniversary of his daughter's passing. Tr. 637. Nearly two years after the accident, on May 22, 2013, Plaintiff reported ongoing depression, anxiety, and irritability and he had a diagnosis of major depressive disorder. Tr. 646. He was described as unkempt with an anxious mood. Tr. 647. He reported that his basic needs were not being met and he had thoughts of self-harm. Tr. 651.

  Here, the ALJ's conclusion that because the diagnosis of acute grief reaction was not carried on for a full twelve months does not accurately reflect the record as a whole. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) ("a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.' ") (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). While the diagnosis became depression and anxiety after the date last insured, the record, when read as a whole, indicates an acute onset date for a severe increase in Plaintiff's mental health impairments. This acute onset date is prior to the date last insured, and the severe symptoms appear to continue for more than twelve months after the acute

onset date. *See* POMS DI 25501.320 ("You must always establish that severity of the impairment(s) is expected to last for 12 months from the onset date (the duration requirement), even if the DLI is in the past. That is, you may need to request medical evidence of record after the DLI is expired.").

Likewise, the ALJ rejected Plaintiff's PTSD diagnosis because the diagnosis was made following the date last insured. However, the diagnostic criteria for PTSD must be present for at least a month prior to any diagnosis. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS – FIFTH EDITION 272 (American Psychiatric Association 2013). Therefore, because the triggering event occurred only a month prior to the date last insured, rejecting the diagnosis of PTSD because it was not made prior to the date last insured leads to a potentially absurd result. A psychological expert should have been called to address the diagnosis of PTSD. *See infra*.

Defendant argues there is "very little medical evidence discussing Plaintiff's mental conditions during the relevant period." ECF No. 13 at 4. However, Plaintiff is only required to demonstrate that the impairments began prior to the date last insured. Here, Plaintiff has demonstrated an acute onset of symptoms prior to the date last insured. Therefore, the amount of medical evidence during the relevant time period itself, is not dispositive in the step two analysis, and the ALJ was required to look past the date last insured to see if the durational requirements were met. Therefore, the case is remanded for the ALJ to properly address Plaintiff's mental health impairments at step two.

**2. Duty to Develop the Record**

Plaintiff argues that the ALJ failed to fully develop the record by failing to request a psychological consultative examination or call a psychological expert at the hearing. ECF No. 12 at 5-7.

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."

*Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). Despite the ALJ's duty to develop the record, it remains the claimant's burden to prove that he or she is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). "An ALJ's duty to develop the record . . . is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Webb*, 433 F.3d at 687 ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate[,] or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.").

      Here, there was a diagnosis of acute grief just prior to the date last insured and a demonstration of continued symptoms of a severe mental health impairment following the expiration of the date last insured. *See supra*. As time wore on, it became clear that Plaintiff's acute grief became chronic. Therefore, a psychological expert could have provided insight into whether acute grief can lead to major depressive disorder and anxiety disorder. Additionally, a psychological expert could have provided insight into the progression of PTSD to the point a diagnosis is made. In this case, the limited time between the date of Plaintiff's daughter's passing and the date last insured was short creating some ambiguity as to when the impairments of depression, anxiety, and PTSD began. Therefore, the ALJ failed to develop the record when he failed to call a psychological expert to testify. Upon remand, a psychological expert shall be called to provide testimony regarding Plaintiff's mental health impairments, their onset dates, whether or not they are considered severe at step two, whether or not they meet a listed impairment at step three, and Plaintiff's residual functional capacity.

      While a psychological expert should have been called at the hearing, a current consultative examination will not be helpful in this case. As Defendant accurately points out, the date last insured had already expired at the time Plaintiff filed for benefits. ECF No. 13 at 4. Therefore, any current consultative

examination will address Plaintiff's impairments and limitations too remote from the relevant period to qualify as substantial evidence regarding Plaintiff's limitations in 2011 and 2012. Therefore, the appropriate remedy is to call a psychological expert to provide testimony as to Plaintiff's psychological impairments from Plaintiff's alleged onset, to his date last insured, and in the years immediately following the date last insured.

### 3. Medical Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions from treating providers. ECF No. 12 at 10-12.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

However, Plaintiff failed to identify any specific provider's opinion and challenge the ALJ's treatment of that opinion. ECF No. 12 at 10-12. Instead, Plaintiff cited to treatment records, which do not necessarily qualify as opinions. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

Despite Plaintiff's lack of argument regarding medical opinions, since the case is being remanded to take testimony from a psychological expert, the ALJ will address all the medical opinions in the record upon remand.

ORDER GRANTING PLAINTIFF'S MOTION - 10

1. **4. Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 12 at 7-10.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20. The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. See 20 C.F.R. § 404.1529(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to take the testimony of a psychological expert, the ALJ will also readdress Plaintiff's symptom statements on remand.

**5. Step Five**

Plaintiff challenges the ALJ's step five determination. ECF No. 12 at 17-20. Because the case is being remanded for the ALJ to take the testimony of a psychological expert and make a new step two determination, a new residual functional capacity determination and step five determination will also be required.

**REMEDY**

Plaintiff asks the Court to remand this case for an immediate award of benefits. ECF Nos. 12 at 20.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court remands for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Remand is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

This case is remanded for additional proceedings to fully develop the record by taking the testimony of a psychological expert. The ALJ will also readdress step two, the medical opinions in the file, and Plaintiff's symptom statements. Additionally, the ALJ will supplement the record with any outstanding medical evidence pertaining to the period in question and take testimony from a vocational expert.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED, in part,** and the matter is **REMANDED** for additional proceedings consistent with this order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED August 5, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE